This is an appeal from a conviction and sentence for the crime of "Receiving stolen property," which is defined by Code of Alabama 1975 (1980 Cum.Supp.), § 13A-8-16 as follows:
 "A person commits a crime of receiving stolen property if he intentionally receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner
". . . ."
By § 13A-8-18, receiving stolen property which "exceeds $100 in value but does not exceed $1,000 in value" constitutes "receiving stolen property in the second degree."
The indictment charged that defendant "did receive, retain, or dispose of stolen property, to-wit: one (1) .357 Magnum, Smith Wesson pistol, the property of L.J. Brasher, of the value of $200.00, knowing that it was stolen, or having reasonable grounds to believe it had been stolen and not having the intent to restore it to its owner, in violation of §13A-8-18, Code of Alabama."[1]
The theft of the pistol described in the indictment was established by the testimony of Mr. Rickey Barnett and Mr. L.J. Brasher, the owner. According to their testimony, the pistol was taken on the night of January 30-31, 1980, with some other property, during a burglary of the place of business of the owner. Officers of the Opelika Police Department were promptly called the next day.
Mr. Brasher testified that about three weeks after the burglary he received the pistol from Eddie Guerin. Mr. Eddie Guerin testified that he obtained the pistol from Charlie Allen. Mr. Allen testified that on February 1 or 2, 1980, he bought the pistol from the defendant.
The value of the pistol as alleged in the indictment was established by the evidence.
The defendant did not testify. Although some witnesses testified in his behalf, there was no testimony in conflict with the evidence that he had sold the pistol to Mr. Allen or to explain his possession of the then recently stolen pistol.
In our opinion, the evidence was sufficient to present a jury issue as to defendant's guilt. See Code of Alabama 1975, § 13-8-16 Commentary, citing Stanley v. State, 46 Ala. App. 542,245 So.2d 827 (1970). There is no contention to the contrary.
A major contention of appellant is as to the action of the court in sentencing the defendant to imprisonment for twenty years pursuant to the Alabama Habitual Felony Offenders Act (Code of Alabama 1975, § 13A-5-9 as supplemented). He says that the Act, as it was applied in the instant case, would be unconstitutional in two different respects. We treat each one separately.
Appellant's contention that the law was unconstitutionally applied to two of the three prior felony convictions in that defendant did not have counsel at the time of such convictions, upon his entry of a plea of guilty, stems from the case cited by appellant of Burgett v. Texas, 389 U.S. 109, 114,88 S.Ct. 258, 261, 19 L.Ed.2d 319, 324 (1967), in which it was held:
 "The same result must follow here. Gideon v. Wainwright, [372 U.S. 335, *Page 776 83 S.Ct. 792, 9 L.Ed.2d 799] established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the states by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. And that ruling was not limited to prospective application. . . . In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceedings, and therefore that his conviction was void. Presuming waiver of counsel from a silent record is impermissible. . . ."
The transcript in the instant case affirmatively shows by the record in each of said prior convictions that defendant formally and fully, intelligently and understandingly, waived his right to counsel. The convictions were conformable to what was held in Burgett, supra.
An additional contention of appellant is to the effect that having occurred prior to the effective date of the Habitual Felony Offenders Act such convictions could not be considered, that to do so would give the Act efficacy as a constitutionally prohibited ex post facto law. The precise question has been decided adversely to appellant in Williams v. State, Ala.Cr.App., 400 So.2d 427 (1981), in reliance upon Gryger v.Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1947).
Appellant also contends that as to one of the prior convictions, which was in the same court as the conviction in the instant case, it was not established on the sentencing hearing by proper evidence. A copy of the minutes, certified by the Clerk of the Court on the day of the hearing was introduced in evidence. A prior conviction may be proved by a certified copy of the court's record. Hunter v. State, 57 Ala. App. 651,331 So.2d 406 (1976). Appellant contends, however, as he did on the trial, that the minute entries were not made until a long time after the conviction. A deputy clerk of the court testified at the sentencing hearing that a certified copy was made "from the Minute Book," that though there had been a lapse in the constant maintenance of the minutes book in the past, she had placed in the minutes book the entry shown by the certified copy admitted in evidence and that she had formulated such entries "from the old docket sheets" or bench notes made by the trial judge at the time. We see no basis for any genuine apprehension as to the trustworthiness of the certified copy of the record of conviction and think that it was properly admitted in evidence and was sufficient, under all the evidence, to prove the prior conviction.
Appellant's only other insistence on error is directed to the denial by the trial judge of a motion by defendant that the judge recuse himself in the case, which the defendant made after the case had been called for trial and after defendant had failed to obtain a requested continuance. Appellant relies upon Code of Alabama 1975, § 12-1-12:
 "No judge of any court shall sit in any case or proceeding in which he is interested or related to any party within the fourth degree of consanguinity or affinity or in which he has been of counsel or in which is called in question the validity of any judgment or judicial proceeding in which he was of counsel or the validity or construction of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties entered of record or put in writing if the court is not of record."
The trial judge had been District Attorney of the Lee County Circuit Court prior to his becoming a judge thereof, of which he is now Presiding Judge, and had as a district attorney prosecuted the defendant. However, the prosecution of the instant case commenced years after he was district attorney and after he had prosecuted defendant, and he had not "been of counsel" in the case in which the motion for his recusal was made. Appellant apparently misconceives Rushing v. City ofGeorgiana, Ala., 361 So.2d 11, 12 (1978), in which the Supreme Court, per Justice Beatty, considered together § 12-1-12 and the Canons of Judicial *Page 777 
Ethics, Canon 3, Part C, providing, inter alia, that a judge should disqualify himself in a particular proceeding in which he has "served as a lawyer in the matter in controversy, . . . ." The judge in that case had been the circuit solicitor of the particular circuit and while acting as circuit solicitor he had prosecuted Rushing for unlawful homicide growing out of the same conduct that formed a basis for Rushing's civil suit against the City of Georgiana. The court held that both cases (the criminal case and the civil case) concerned the same "matter in controversy," which required the judge's disqualification. No such situation exists in this case. No statute, no canon, no rule of reason supports the position of appellant that the mere fact that the trial judge had previously been a district attorney and had previously prosecuted the appellant as to offenses unrelated to the crime charged in this case required his disqualification. Nothing was presented to indicate any partiality on the part of the judge or that his impartiality might reasonably be subject to question. The record before us indicates exactly the opposite.
It probably should be observed that no motion for a recusal was made in connection with the sentencing hearing, that conceivably a factual question could have arisen thereon as to which the judge's recollection of pertinent events could have been different from that of defendant or other witnesses, but it appears that no such complication arose.
In addition to our consideration of all the issues presented by appellant, we have examined the record to determine whether there has been any prejudicial error whatever to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
[1] It is to be noted that the indictment omits the word "intentionally" as found in the statutory definition of the crime. However, the sufficiency of the indictment was not challenged in the trial court, and it is not questioned by appellant. The trial court in its charge to the jury fully covered the necessity for the existence of the element of intention.