277 So.2d 882

**Alvin FLETCHER**
**SC 318.**

v.

**The STATE of Alabama.**

Supreme Court of Alabama.

May 10, 1973.

————◆————

William D. Jetton, Guntersville, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

FAULKNER, Justice.

This is a 1971 Alabama version of the Eternal Triangle. Oliver Conley was "dating" Mrs. Alvin "Poss" Fletcher. Mr. Fletcher asked a sheriff how much time he would get for murdering Conley. Conley told his father, in response to a warning, that there wasn't any danger because "all them folks over there liked him." Fletcher told a relative: "I've had all I can stand." Conley stepped out in front of a grocery store. Fletcher shot him through the chest. Conley fell on the floor and died.

Alvin "Poss" Fletcher was tried by jury, found guilty of second-degree murder, and sentenced to twenty years in the penitentiary. He appealed to the Alabama Court of Criminal Appeals, from whence the cause was transferred to this Court.

Six purported errors are complained of on appeal: (1) denial of a continuance to allow appellant's mother-in-law to testify; (2) undue restriction of the questioning of prospective jurors; (3) a remark by the trial judge: "If you gentlemen don't hurry and get this jury struck, I'll strike it myself;" (4) a ruling that a photograph of the deceased prior to the homicide was inadmissible; (5) failure by the State to prove that the gunshot was the cause of death; and (6) that the verdict of the jury was contrary to the weight and preponderance of the evidence.

A motion for a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused. Peaden v. State, 275 Ala. 72, 152 So.2d 136 (1963); Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960). The record in the instant case shows that the defendant was granted a continuance on September 27, 1971 because of illness of a prospective witness. On November 29, defendant moved for another continuance, because Agnes Treece, the defendant's mother-in-law, was hospitalized. This motion was denied by the trial judge. A statement of what her testimony would be was later admitted by stipulation. We find no clear abuse of discretion in the overruling of the motion for a continuance.

Appellant complains of alleged undue restriction of his questioning of prospective jurors. He does not argue the point in brief, or specify as to how this restriction took place. In defense questioning of prospective jurors covering 12 pages of transcript, there were only three occasions that a prosecution objection was sustained. Defense counsel was not permitted to take the names of those who had previously served on juries. Further, objections to two questions as to whether the jury understood the insanity defense were sustained.

Our statutes provide for examination of jurors as to "qualifications, interest, or bias" and "any matter that might tend to affect their verdict." Title 30, § 52, Code of Alabama 1940, Recompiled

1958. The scope of examination permitted is within the sound discretion of the trial judge. Dyer v. State, 241 Ala. 679, 4 So. 2d 311 (1941); Louisville & N. R. Co. v. Davis, 236 Ala. 191, 181 So. 695 (1938). By the explicit terms of the statute itself, we find no abuse of discretion in curtailing the inquiry concerning prior jury service, or in sustaining objections to the two legal questions asked of the jury.

Appellant complains of a remark by the court, "If you gentlemen don't hurry and get this jury struck, I'll strike it myself."

■ As discussed in the recent case of Allen v. State, 290 Ala. 339, 276 So.2d 583 (1973), the trial judge is not required to be a robot without emotional reaction to happenings in his courtroom. Impatience with excessive delay by counsel is a natural and understandable reaction. We see no prejudicial effect on defendant's rights, especially since the judge's rebuke was directed towards both attorneys, the prosecutor as well as the defense counsel.

■ Photographs are admissible into evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962). Their admission is within the sound discretion of the trial judge. We can discover no error in his ruling against allowing into evidence a photograph of Conley, the victim, while alive.

Appellant contends that the cause of death was never proven as a matter of law.

In the words of the late Judge Annie Lola Price, in Gurley v. State, 36 Ala.App. 606, 608, 61 So.2d 137, 138 (1952):

"Of course, it was incumbent upon the State to show a causal connection between the injuries inflicted by defendant and the death of deceased, and such fact must be proven beyond a reasonable doubt, but it may be established by circumstances as well as by direct evidence. * * *

"The evidence is without dispute that the fender of accused's automobile struck deceased's head; she was thrown twelve to fifteen feet by the impact. When picked up she was unconscious and remained unconscious until her death in a hospital five days later. Under the evidence, the question as to whether deceased died as a result of the injuries inflicted by defendant was for the jury."

■ We think that under all the evidence testified to by the witnesses that the jury was fully warranted in finding that Conley died of a gunshot wound inflicted by the defendant.

■ Finally, appellant insists that the verdict of the jury was contrary to the evidence.

The grocery store owner, Mr. Lowe, testified as follows:

"Q. What, if anything, did you hear immediately after Mr. Conley walked out the door?

"A. Well, I heared [sic] it went like a car backfired and I started to the window to see what it was.

"Q. Then what happened?

"A. He came in at the door.

"Q. All right, sir.

"A. And he was . . . and he told me to get the doctor and the law. * * * He fell on the floor. * * * I seen . . . seen a gun pointing through the door and I hollered and said, 'Don't shoot that thing in here.' So, then when I hollered, why, he dropped the gun and come back around . . . come around and peeped into the door where I was at.

"Q. And who was that?

"A. That was Poss.

"Q. Alvin Fletcher, the defendant?

"A. Fletcher."

Also in evidence was a statement by the defendant to lawmen: "Boys, I shot him and I'm not going to give you any trouble."

At no point did defendant deny shooting Conley, or present any evidence whatever to that effect. The jury verdict of guilty was amply supported by the evidence.

No error appearing on close examination of the record, the judgment and sentence are affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.